UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION


**Ovation Services LLC**
**as agent for FGMS Holdings LLC,**

*Appellant*

**v.**                                               No.  SA-23-CV-00361-JKP

**Rosemary Perez,**

*Appellee,*

*Trustee,*
**U.S. Trustee's Office**

*Trustee,*
**Mary K. Viegelahn**


<u>**OPINION**</u>


Before the Court are two appeals arising out of the Chapter 13 bankruptcy case of Rosemary Perez (Perez). Upon review, the Court **AFFIRMS** the bankruptcy court's Order Confirming Chapter 13 Plan. The Court **AFFIRMS** the bankruptcy court's Order of Designation of Appellate Record, as Ovation Service waives this appeal.


**Factual and Procedural Background**

In 2015, Perez executed a Promissory Note secured by a Deed of Trust-Tax Lien with FGMS Holdings, LLC in exchange for payment of the ad valorem taxes owed on her home (the Property). The Promissory Note (Note) was in the amount of $12,323.05 at an annual rate of 14.00% interest. *ECF No. 9-2, p. 113*. At some time, Ovation became the agent of FGMS Holdings, and thereby obtained the undisputed statutory tax lien on the Property.

1

On July 7, 2022, Perez filed her first voluntary petition for relief under Chapter 13 of the Code. *ECF No. 9-2*, pp. 4-10. Perez disclosed her interest in the Property, with a current value of 72,780.00, and disclosed Ovation as a creditor with an ad valorem tax lien on the Property. *ECF No. 9-2*, pp. 12, 23. In her Chapter 13 Plan (the Plan) filed on July 7, 2022, Perez proposed to pay Ovation in full on an estimated amount of $12,800.00 plus 18.75% interest on a pro-rata basis. *Id*. at pp. 58-66. Ovation filed its Proof of Claim on August 1, 2022, stating the amount owed was $34,667.38. *Id*. at pp. 109-111. Ovation also filed an objection to confirmation of the Plan because Perez's disclosure of the estimated amount owed of $12,800.00 was inaccurate: the correct amount was $34,667.38, and the correct interest rate was 14%; the Plan failed to provide that Ovation retain its lien to secure its post-petition attorney fees and costs; the Plan failed to provide for fixed equal monthly payments; the Plan failed to comply with §511 of the Bankruptcy Code; the Plan failed to treat the full amount of its claim; and Perez failed to maintain insurance as required under the loan documents. *Id*. at pp. 72-75.

Perez filed an Amended Plan on September 15, 2022, in which she continued to treat the Note and tax lien owed to Ovation as a secured claim to be paid in full; however, she revised the amount of debt and interest rate to $34,667.38 and 14%, respectively, as reflected in Ovation's Proof of Claim. *ECF No. 9-2*, pp. 91-99. Following Trustee Viegelahn's responses, Ovation then filed an Amended Objection to confirmation of the Plan ("Amended Objection") presenting new arguments. *BKC ECF No. 26*; *ECF No. 9-2*, pp. 227-237. In this Amended Objection, Ovation argued the Second Amended Debtor's Plan should not be confirmed because: (1) Trustee Viegelahn was required to file a written objection to confirmation to be heard at the hearing; (2) related to this first argument, the Bankruptcy Court's Standing Order, which requires only creditors to file written objection, is invalid; (3) Perez failed to maintain insurance; (4) Trustee

Viegelahn improperly insisted the Plan require Ovation to release its lien upon full payment and discharge of the original debt because an adversary proceeding is required to release its lien and because its post-petition attorney fees and costs should also be secured by its lien on the Property; (5) Ovation may accrue attorney fees post-petition pursuant to Bankruptcy Code §506(b), but does not have to file applications or motions for payment of these fees; (6) determination of post-petition fees is Perez's burden under §505; and (7) its statutory lien passes through bankruptcy unaffected even for undisclosed and unapproved post-petition attorney fees and costs. *ECF No. 9-2*, pp. 227-237.

In response, Trustee Viegelahn argued: (1) she was not required to file a written objection; (2) determination of reasonableness of post-petition fees is a matter of federal law; (3) Ovation improperly sought to invalidate the standard provision of the form plan required to be filed by all Chapter 13 debtors in the Western District of Texas; (4) §506(b) requires the filing of an application by an oversecured creditor for any post-petition fees, costs or charges; (5) the Plan (or Order Confirming Plan) should include a provision that requires Ovation to file periodic application(s) for post-petition attorney fees, costs, or charges during the term of the Plan for the Bankruptcy Court's determination of reasonability. *Id*. at pp. 227-245.

On October 25, 2022, the Bankruptcy Court held a hearing on Ovation's objections to confirmation of Perez's Amended Plan. *Id*. at pp. 247-368. After argument by Ovation and Trustee Viegelahn, the Bankruptcy Court took the matter under advisement. On January 25, 2023, the Bankruptcy Court issued an Order overruling Ovation's Amended Objections to Confirmation of the Amended Plan. *In re Perez*, 648 B.R. 833 (Bankr. W.D. Tex. 2023) (Order also found at *ECF No. 9-2*, pp. 371-379). In this Order, the bankruptcy court held: (1) Trustee Viegelahn was not required to file written objection to be heard at the hearing for confirmation of

3

Perez's Plan; (2) Ovation's remedy to obtain payment of post-petition attorney fees and costs was to file a motion or application for attorney fees and costs pursuant to Bankruptcy Code §506(b), which governs determination of secured status; (3) Bankruptcy Code §505, governing determination of tax liability, did not govern Ovation's claim for post-petition attorney fees and costs, but applied only to Ovation's security interest in Perez's property; and (4) Bankruptcy Rule 2016, which required filing disclosure of compensation or fee application, applied to Ovation's claim for post-petition attorney fees and costs. *In re Perez*, 648 B.R. at 833 (synopsis). The Bankruptcy Court scheduled a hearing for plan confirmation for February 16, 2023, and stated, because it denied Ovation's objections and reset confirmation, "the Trustee may propose the manner in which Ovation must make periodic disclosures" of its post-petition attorney fees and costs. *Id*. at p. 838, n.8. The Bankruptcy Court further ordered "Ovation is precluded from raising these arguments again at plan confirmation." *Id*. at 847.

After the Bankruptcy Court's decision, Ovation presented five questions in a Motion for Reconsideration. *ECF No. 9-2*, pp. 391-395. The Bankruptcy Court granted the Motion for Reconsideration for the sake of clarifying its previous Order. *Id*. at pp. 549-552. In the Order on the Motion to Reconsider, the Bankruptcy Court stated Ovation sought advisory opinions through its presentation of five questions, which it would not answer; however, to the extent it could answer the questions for clarification, it stated §506(b) and Bankruptcy Rule 2016 apply from the petition date to the date a bankruptcy case terminates, as opposed to the date of confirmation of the Plan. *Id*.

At the Plan Confirmation Hearing on February 16, 2023, Trustee Viegelahn requested the bankruptcy court adopt its proposed manner and frequency by which Ovation was to file applications for post-petition charges. *ECF No. 9-3*, p. 4, line 22-25; p. 5, line 6-20; p. 6, line 4-

4

7. The bankruptcy court then confirmed the Amended Plan and entered it on March 8, 2023. *ECF No. 9-2*, pp. 553-555. The Order Confirming Perez's Amended Plan ("Confirmation Order") states,

> Any creditor having a statutory lien and/or lien on Debtor's principal residence, including but not limited to Ovation Services, LLC, shall file an application for post-petition fees, costs or charges pursuant to 11 U.S.C. §506(b) and Federal Rule of Bankruptcy Procedure 2016, unless Fed. R. Bankr. P. 3002.1 applies, within sixty (60) days from the date of the confirmation order and annually every year thereafter on or before February 1st of each year, with a final application filed not later than six (6) months prior to the completion of the plan.

*ECF No. 9-2*, p. 554.

On March 22, 2023, Ovation filed its Notice of Appeal. *ECF No. 9-2*, pp. 556-557. Designations by Ovation and Trustee Viegelahn for the record on appeal were transmitted on April 20, 2023. *ECF Nos.* 9, 10. Ovation objected to Trustee Viegelahn's record designations, and this appeal was abated until the Bankruptcy Court made its determination of the proper record designations. Following the Bankruptcy Court's ruling on record designations, Ovation appealed, and the Bankruptcy Court's ruling on Trustee Viegelahn's record designations became the subject of Ovation's second appeal [Case No. 5:23-cv-0829-XR] ("Second Appeal"). This Court consolidated the Second Appeal with this appeal. *ECF No. 31*. Ovation filed its appellate brief on October 30, 2023. *ECF No. 34*.

**Standard of Review**

A district court reviews a bankruptcy court's findings of fact under the clearly erroneous standard. *Saenz v. Gomez*, 899 F.3d 384, 390 (5th Cir. 2018); *Wiggains v. Reed*, 848 F.3d 655, 660 (5th Cir. 2017); *Thaw v. Moser*, 769 F.3d 366, 368 (5th Cir. 2014); *Whitley v. Cage*, 737 F.3d 980, 985 (5th Cir. 2013). A district court conducts de novo review on appeal of questions of

law, legal conclusions, and mixed questions of fact and law. *Id*.; *Credit v. Schott (In re Jackson)*, 850 F.3d 816, 818 (5th Cir. 2017). When an "appeal is based on the bankruptcy court's application of law to undisputed facts, the de novo standard of review applies." *Newco Energy v. Energytec, Inc. (In re Energytec, Inc.)*, 739 F.3d 215, 218 (5th Cir. 2013). In conducting de novo review, the district court uses the bankruptcy court's record, but reviews the facts, evidence and law without deference to the bankruptcy court's rulings. *Appeal de novo*, Black's Law Dictionary, p. 121 (11th ed. 2019). That is, the reviewing court steps into the shoes of the bankruptcy court, conducts the same legal analysis, and may reverse the bankruptcy court only if it misinterpreted or misapplied applicable law or erred in forming any legal conclusion. *See In re Taxotere (Docetaxel) Products Liab. Litig.*, No. MDL 16-2740, 2019 WL 2330435, at *1 (E.D. La. May 31, 2019). When reviewing a bankruptcy court's conclusions of law de novo, a district court may affirm the decision on any ground supported in the record and need not agree with every legal conclusion reached by the bankruptcy court. *See Arguello v. LaFavers*, 448 F. Supp. 3d 655, 662 (S.D. Tex. 2020); *Traina v. Whitney National Bank,* 109 F.3d 244, 246 (5th Cir. 1997). A matter of statutory interpretation is a legal conclusion this court reviews de novo. *Matter of Linn Energy, L.L.C.*, 936 F.3d 334, 340 (5th Cir. 2019); *In re Foust*, 310 F.3d 849, 854 (5th Cir. 2002).

## Issues on Appeal

As a threshold matter, review of Ovation's opening brief reveals several fatal deficiencies. Ovation failed to comply with Bankruptcy Rule 8014, which provides the appellant's brief must contain: (1) a jurisdictional statement; (2) "a statement of the issues presented and, for each one, a concise statement of the applicable standard of appellate review;"

(3) "a concise statement of the case setting out the facts relevant to the issues submitted for review, ... with appropriate references to the record;" (4) "a summary of the argument"; and (5) "the argument, which must contain the appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]" Fed. R. Bankr. P. 8014(a)(4)-(8). Bankruptcy Rule 8014 is written in mandatory terms, stating the Appellant's brief "must contain" the specified information. Fed. R. Bankr. P. 8014.

In its appellate brief, Ovation did not present any argument pertaining to the consolidated appeal of the bankruptcy court's designation of record. For this reason, Ovation waives this appeal, and the bankruptcy court's ruling on Trustee Viegelahn's designation of the record for appeal is AFFIRMED.

Further, in a footnote on page 9 of its appellate brief, Ovation includes conclusory argument pertaining to the issue whether Trustee Viegelahn was required to file written objections to be heard at the confirmation hearing. *ECF No. 34,* p. 9 n. 4. Because this argument is inadequately briefed and improperly presented, this Court concludes Ovation abandons any appellate issue regarding whether the bankruptcy court erred in ruling Trustee Viegelahn was not required to file written objections to confirmation of the Plan. Fed. R. Bankr. P. 8014(a)(8).

Further, in its appellate brief, Ovation presents 19 "Points of Error," but does not include a recitation of "Issues on Appeal" as required by Bankruptcy Rule 8014(a)(5). *ECF No. 9-1*, pp. 7- 13. Although it is not required to do so, this Court will overlook this briefing deficiency and will not dismiss the appeal on these procedural and non-substantive errors. However, upon review, it appears Ovation omitted these critical briefing requirements in several other appeals based upon identical facts and similar appellate issues. Ovation is cautioned it must correct these

briefing errors and omissions in future appeals to avoid the possibility of dismissal based upon briefing deficiencies and failure to distinguish appellate argument. Fed. R. Bankr. P. 8014(a).

Next, the "Points of Error" identified as "A (9) through (13), B, C, D and E" present arguments that were not presented to the Bankruptcy Court, thus raising issues for the first time on appeal. This Court will not address issues raised for the first time in this appeal. *Matter of Gilchrist*, 891 F.2d 559, 561 (5th Cir. 1990); *Gilani v. Wynn Las Vegas, LLC*, 654 B.R. 238, 243 (E.D. Tex. 2023), *aff'd sub nom.*, 2024 WL 340822 (5th Cir. Jan. 30, 2024). For this reason, these "Points of Error" are overruled and dismissed. The only remaining "Points of Error," then, are those identified in "A (1) through (8)."

Finally, for the most part, the listed and briefed points of error identified in "A (1) through (8)" are reiteration of Ovation's arguments before the Bankruptcy Court, but re-framed as error because the Bankruptcy Court did not rule in its favor. This reiteration and reframing is not proper appellate argument and does not comply with the Bankruptcy Rules. Fed. R. Bankr. P. 8014(a)(5). Due to this improper presentation of appellate argument, it is difficult for this Court to determine what specific error Ovation contends the Bankruptcy Court committed. For this reason, this appeal could be dismissed for inadequate briefing. *See id.* Again, upon review, it appears Ovation omitted this critical briefing requirement in other appeals. *See Ovation Services, LLC v. Morgan*, No. 2:22-CV-00309, 2023 WL 6366581, at *3,*8 (S.D. Tex. Aug. 28, 2023); *In re Martin*, No. 22-30148, 2022 WL 16937609, at *3-*4 (Bankr. S.D. Tex. Nov. 14, 2022). Ovation is cautioned it must correct this briefing error in future appeals to avoid the possibility of dismissal based upon non-substantive briefing deficiencies. However, to the extent it can, the Court will address Ovation's construed appellate argument to preclude any recurrence of Ovation's historic repetitive appeals which only drain debtors' assets.

It is clear from the arguments before the bankruptcy court and the "Points of Error" that the relevant underlying facts are undisputed. Although not properly stated, Ovation seeks appeal only from the bankruptcy court's legal conclusions based upon these undisputed facts, which requires de novo review. Because this is a purely legal issue and for the sake of clarity, finality, and judicial economy, this Court will liberally construe Ovation's appellate arguments and attempt to frame and address the perceived issues on appeal as derived from Ovation's objections to confirmation of the Amended Plan and the Bankruptcy Court's iteration of the legal issues before it and its specific ruling on these legal issues.

Accordingly, from review of the undisputed factual and procedural background, the Court construes the central issues on appeal from the bankruptcy court's confirmation of the Amended Plan, overruling Ovation's objections thereto, are twofold: (1) Whether the bankruptcy court erred by holding Bankruptcy Code §505 does not apply, but rather, Bankruptcy Code §506(b) and Fed. R. Bankr. P. 2016 apply under these facts, which require Ovation to file an application and obtain bankruptcy court approval to obtain post-petition attorney fees and costs; and (2) Whether the bankruptcy court erred by holding Ovation's statutory tax lien can be extinguished through the Chapter 13 Plan if the amount stated in Ovation's Proof of Claim (the underlying debt) is paid in full, even though post-petition attorney fees and costs may not yet be fully paid.

## Discussion

### 1.  Whether Bankruptcy Code §505 Governs Ovation's Collection of Post-Petition Attorney's Fees and Costs.

Ovation argues that, as a statutory tax lien holder, the only provision of the Bankruptcy Code that applies to its collection of its post-petition attorney fees and costs is 11 U.S.C. §505.

Because only §505 applies to statutory tax lien holders, the bankruptcy court erred by requiring Ovation to file an application under 11 U.S.C. §506(b) and Fed. R. Bankr. P. 2016 to recover post-petition attorney fees and costs after bankruptcy-court approval.

Ovation attempted to avoid bankruptcy-court oversight and determination of reasonability of its requested attorney fees in other appeals. *Ovation Services, LLC v. Morgan*, 2023 WL 6366581, at *3–4 (S.D. Tex. Aug. 28, 2023); *In re Martin*, 2022 WL 16937609 at *4; *but see In re Reed*, No. 17-52875-RBK, 2021 WL 4395821, at *7, n.5 (Bankr. W.D. Tex. Sept. 24, 2021)(whether Bankrutpcy Rule 3002.1 applies to Ovation's security interest; distinguished by *Morgan*, 2023 WL 6366581, at n.5). In those cases, however, Ovation argued that by requiring it to comply with procedures for prosecuting its post-confirmation claims, the Chapter 13 Plan violated its rights as a statutory tax lien holder. *Id.* Simply, Ovation argued it was not subject to the requirements of §506(b) and Fed. R. Bankr. P. 2016. The bankruptcy court and/or appellate district court rejected Ovation's basis and reasoning in these previous cases. *Id.*

As a new path to obtain a favorable finding that it need not file applications for payment of attorney fees and costs and obtain a reasonable-determination from the Bankruptcy court, Ovation argues for the first time in this case that it is not subject to Bankruptcy Code §506, but, instead, its status as an oversecured statutory tax lien creditor falls under Bankruptcy Code §505 because its post-petition attorney fees and costs qualify as an "addition to tax" as used in that statute. *In re Perez*, 648 B.R. at 839-40. Ovation's construed appellate argument is that as an oversecured statutory tax lien creditor, the Amended Plan improperly places unreasonable burdens on it to preserve its post-petition claims for attorney fees and costs and creates the potential that it must release its lien on the Property before all debt owed is paid. Because its pre-petition claim is to be paid in full under the Plan, Ovation's concern is not that these post-

confirmation claims are precluded by the Chapter 13 Plan, but that: (a) Ovation is required to give notice to the trustee every 180 days of incurring such amounts, (b) the trustee may challenge specific charges as unreasonable, and (c) the bankruptcy court adjudicates the propriety of the charges. Under §505, Ovation contends the Bankruptcy Court does not hold jurisdiction to determine the reasonability of its attorney fees and costs, and it may collect these outside of the bankruptcy, relying on its lien on the Property if necessary.

In its determination of this purely legal issue based upon undisputed facts, the bankruptcy court examined Ovation's arguments and the caselaw it cited to support these arguments. *In re Perez*, 648 B.R. 833, 840-45 (Bankr. W.D. Tex. 2023). The bankruptcy court distinguished Ovation's cited cases and held none "suggest or find that a §505 motion is the only means for adjudicating a tax claimant's entitlement to post-petition attorney's fees and costs." *Id*. at 840. Upon de novo review of application of Ovation's cited cases, this Court finds the bankruptcy court's analysis accurate and correct. In distinguishing these cases, the bankruptcy court reached a correct legal conclusion and did not misinterpret or misapply applicable law. *See In re Taxotere (Docetaxel) Products Liab. Litig.*, 2019 WL 2330435, at *1 (standard of review).

Next, this Court must examine the ultimate legal conclusion reached by the bankruptcy court: §505 does not apply to Ovation as a statutory tax lien holder with regard to its recovery of post-petition attorney fees and costs. Rather, Ovation must file an application under 11 U.S.C. §506(b) and Fed. R. Bankr. P. 2016 to obtain bankruptcy-court approval.

To begin this analysis, the parties do not dispute Ovation holds a statutory tax lien on Perez's property, and it is an oversecured creditor, which entitles it to post-petition attorney fees and costs. *ECF No. 9-2, p. 112*; *see* 11 USC §506(b). As an oversecured creditor, Ovation seeks to pursue postpetition attorney fees and costs outside of bankruptcy-court scrutiny under

§505(a)(1), which states: "… the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, *or any addition to tax*, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. §505. In comparison, §506(b) of the Bankruptcy Code states the holder of an oversecured claim shall be allowed "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. §506(b). In this respect, §506(b) operates in conjunction with Bankruptcy Rule 2016, which mandates the holder of a claim upon a bankruptcy petitioner's assets must file an application with the court itemizing all fees, expenses, and charges incurred after the petition is filed and prior to confirmation. Fed. R. Bankr.P. 2016(a); *see In re Jack Kline Co., Inc.*, 440 B.R. 712, 732-33, 740 (Bankr. S.D. Tex. 2010); *In re Padilla*, 379 B.R. 643, 654 (Bankr. S.D. Tex. 2007); *Jones v. Wells Fargo Home Mortgage,* 366 B.R. 584, 594–95 (Bankr. E.D. La. 2007); *In re Allen,* 215 B.R. 503, 504 (Bankr. N.D. Tex. 1997).

The Fifth Circuit recognizes the applicability of §506(b) to attorney fees and costs incurred post-petition and pre-confirmation. *In re 804 Cong., L.L.C.*, 756 F.3d 368, 373 (5th Cir. 2014). This requirement serves to allow bankruptcy-court scrutiny of oversecured creditors' requests for post-petition fees, expenses, and interest to maximize equality among creditors. *Id*. Courts require oversecured creditors to prove their claims meet §506(b)'s reasonableness requirements and the burden is on the creditor to show entitlement and reasonableness. *In re 804 Cong.*, 756 F.3d at 373; *In re Padilla,* 379 B.R. at 654 (citing *In re Tate,* 253 B.R. 653, 666 n. 8 (Bankr. W.D. N.C. 2000)). If a party seeking such postpetition fees and costs did not file applications, it would be "'impossible to determine the charges' reasonableness under §506(b)' and violate the spirit of disclosure embodied in the Bankruptcy Code." *In re Jack Kline Co., Inc.*,

440 B.R. at 733 (quoting *Sanchez v. Ameriquest Mortg. Co. (In re Sanchez),* 372 B.R. 289, 305 (Bankr. S.D. Tex. 2007)).

Following this longstanding precedence of the applicability of §506(b) and Bankruptcy Rule 2016 to these facts, upon de novo review, this Court finds the bankruptcy court correctly applied the law and required Ovation, as an oversecured creditor, to file application for payment of its postpetition attorney fees and costs. *In re Perez*, 648 B.R. at 844 (discussing *In re 804 Congress*, 756 F.3d 368). Further, Ovation provides no caselaw that supports its position that only §505 applies to it as an oversecured creditor or that its postpetition attorney fees and costs qualify as "additions to tax" under that provision, and this Court finds none.

This new argument also contradicts Ovation's own admission in its Proof of Claim filed in the underlying bankruptcy proceeding. Ovation's Proof of Claim included a reservation of rights to recover post-petition fees, expenses or other charges, which stated:

> The Proof of Claim submitted by Creditor does not include amounts accruing after the filing of the bankruptcy case for interest on the claim, or any reasonable fees, costs or charges provided for under the agreement between the Creditor and Debtor or State statute under which Creditor's claim arose. Creditor hereby reserves the right to submit such amounts to the Debtor or the Bankruptcy Court and to augment the amounts claimed on the Proof of Claim, consistent with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

*ECF No. 9-2*, p. 112. Here, Ovation clearly admits its post-petition attorney fees and costs must be submitted to the bankruptcy court for approval. *Id*.

Upon this de novo review this Court concludes the bankruptcy court's legal conclusions are correct as applied to the undisputed facts. Bankruptcy Code §505 does not apply to Ovation as it pertains to any recovery of postpetition attorney fees or costs. Rather, to obtain post-petition attorney fees and costs, Bankruptcy Code §506(b) applies, and Ovation must comply with the

requirements of Fed. R. Bankr. P. 2016. The Court affirms the bankruptcy court's determination on this legal issue.

### 2. Whether Ovation's Oversecured Tax Lien "Passes Through Bankruptcy" and May Not be Extinguished Upon Discharge of the Underlying Debt

Although Ovation reiterates the same arguments on appeal that were refuted by the bankruptcy court and cites the same cases to support its argument, this Court's focus is not specifically on Ovation's contentions, but on whether the bankruptcy court made an incorrect legal conclusion in its analysis or incorrectly applied the law to the undisputed facts on these points.

This second issue raised on appeal is tangentially tied to determination of the first issue. Construing its appellate argument liberally, Ovation contends the bankruptcy court erred by holding Ovation's statutory tax lien can be extinguished through the Chapter 13 Plan after Ovation's pre-petition debt, as stated in its Proof of Claim, is paid in full and discharged. Ovation contends the debt owed to it by Perez includes the attorney fees and costs incurred during the bankruptcy proceedings because they are allowed in its loan documents. Therefore, its statutory tax lien must "pass through bankruptcy" and may not be discharged with the underlying debt should it be paid in full.

Hinging on its first argument that it may collect its post-petition attorney fees and costs outside of bankruptcy-court scrutiny through Bankruptcy Code §505, Ovation reasons that its "lien on attorney fees" survives any bankruptcy discharge of debt until these post-petition attorney fees and costs are satisfied in full. Because Ovation does not intend to collect its post-petition attorney fees and costs "through the bankruptcy," the lien will pass through bankruptcy. After the lien has passed through bankruptcy, Ovation will still have recourse against Perez for

14

payment of its postpetition attorney fees and costs even if she obtains a discharge, and it may foreclose the Property to collect these expenses.

This Court understands the relevant disputes before the bankruptcy court were: (1) when and how Ovation's statutory tax lien may be extinguished, and (2) whether Ovation's lien may be extended to include additional attorney fees and costs incurred post-petition, and thus, beyond the time in which the underlying debt is paid. In making its arguments, Ovation conflates some concepts and principals: (1) the distinction between extinguishing a lien and avoiding a lien; and (2) the distinction between discharging a debt and extinguishing a lien.

### (1) Extinguishing a Lien v. Avoiding a Lien

First, Ovation couches its arguments as if Perez and Trustee Viegelahn are attempting to avoid its lien. However, the bankruptcy court, as well as Perez and Trustee Viegelahn, all recognized Ovation's tax lien and no party attempts to dispute, avoid, or nullify the tax lien through bankruptcy. The bankruptcy court recognized Ovation's oversecured tax lien on the property. In addition, the bankruptcy court recognized "the bedrock principle that liens not satisfied in bankruptcy survive bankruptcy." *In re Perez*, 648 B.R. at 842. Therefore, Ovation's argument that the bankruptcy court erred by allowing Trustee Viegelahn to avoid its tax lien is misguided. The bankruptcy court did not so err.

### (2) Discharging a Debt v. Extinguishing a Lien

Next, to avoid repeat of Ovation's conflation of concepts, distinction must be made between discharging a debt and extinguishing a lien. Here, in making its argument that it should retain its "lien on attorney fees" and this lien cannot be discharged, Ovation conflates these concepts and misapplies law to reach an advantageous result.

A lien on property only exists to secure payment of a specific debt. *In re Mason*, No. 1004195EE, 2017 WL 394344, at *7 (Bankr. S.D. Miss. Jan. 27, 2017)(citing *In re Stovall,* 256 B.R. 490 (Bankr. N.D. Ill. 1999). A creditor with a note secured by a lien has two non-exclusive remedies upon default: (1) to collect on the note as a personal, contractual liability of the debtor (in personam), and (2) to recover against, or foreclose upon, the property which serves as collateral (in rem). *In re Kleibrink*, No. 3:07-CV-0088, 2007 WL 2438359, at *5 (N.D. Tex. Aug. 28, 2007), aff'd, 621 F.3d 370 (5th Cir. 2010). The debtor's filing of a bankruptcy petition does not alter this remedy scheme; however, the parties' rights and obligations are subject to the provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. *Id.*

As it pertains to Remedy 2 (in rem), the Bankruptcy Code does not require a secured creditor with a lien to file a Proof of Claim. *See* 11 U.S.C. § 501; Fed. R. Bankr. P. 3002(a). A secured creditor can ignore the bankruptcy case and look solely to its collateral to satisfy the debt, although it will be stayed from doing so during the pendency of the bankruptcy. *In re Orr*, 180 F.3d 656, 660 (5th Cir. 1999); *In re Kinion*, 207 F.3d 751 (5th Cir. 2000). This means, generally, a secured creditor's lien on the property "passes through bankruptcy unaffected."

A lien on property securing a debt may be extinguished in two ways that are relevant to this case[1]: (1) a debtor provides for, and pays in full, the underlying debt under a confirmed plan; and (2) by operation of § 506(d) of the Bankruptcy Code. *See In re Kleibrink*,  2007 WL 2438359, at *5. Under the first method, when a debtor satisfies all payments due a creditor under a Chapter 13 confirmed plan, the bankruptcy court must discharge the debt, with certain exceptions specified in Bankruptcy Code 11 U.S.C. § 1328(a). Such a discharge operates as an injunction against the commencement or continuation of any action to collect, recover, or offset

---

[1] While there are additional methods to avoid a lien, only these two are not implicated under these facts and by Ovation's arguments.

any discharged debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). Because a lien exists only to secure the debt, which is then discharged, "it is not that the lien is extinguished, but rather, the underlying debt is paid such that the lien secures nothing and is therefore discharged. *In re Kleibrink*, 2007 WL 2438359, at *5; *In re Allen,* 122 Fed. App'x. 96, 97 (5th Cir. 2004); *see also In re Stovall*, 256 B.R. at 493. Thus, liens do not survive bankruptcy where the debt is provided for in the plan and is paid in full. *Id.* However, if the debt is not paid in full under the Plan, the lien remains intact and passes through bankruptcy unaffected. *Id*.

Following this distinction, the bankruptcy court did not err, as Ovation contends, by overruling its objection to confirmation of the Plan and treating its claim as a "paid in full" claim which can be discharged should Perez provide full payment, which would, then, extinguish Ovation's tax lien. Ovation chose to participate in the bankruptcy proceeding and did file a Proof of Claim.

To support its argument that "unsatisfied liens" for attorney fees and costs must survive discharge and pass through bankruptcy, Ovation cites two cases, *In re Simmons*, 765 F.2d 547, 556 (5th Cir. 1985) and *In re Howard*, 972 F.2d 639 (5th Cir. 1992). In analyzing this argument, the bankruptcy court discussed and distinguished each of these cases. As stated previously, the bankruptcy court's analysis and distinction is accurate and correct. Neither of these cases support Ovation's argument, nor does Ovation demonstrate how the bankruptcy court erred in its analysis. Consequently, the bankruptcy court's determination does not improperly discharge or extinguish Ovation's lien, as it argues, but rather, the bankruptcy court held that when Perez's underlying debt is paid, the lien will be discharged because the lien, then, secures nothing, and is therefore, also discharged. The bankruptcy court ended its analysis here, stating, "[t]he basic

concept that unsatisfied liens survive discharge does not resolve the ultimate issue." *In re Perez*, 648 B.R. at 843.

Given that this well-established caselaw dispels Ovation's basic argument that the bankruptcy court erred by confirming the Plan which allows its lien to be extinguished should Perez satisfy the underlying debt, and given Ovation's awkward phrasing of its claim as an "unsatisfied lien for attorney fees and costs,"[2] this Court believes the bankruptcy court's analysis might fall short of full resolution of the heart of Ovation's argument. It appears Ovation could be arguing that because the parties' original loan agreement allows Ovation to recover post-petition attorney fees and costs, these expenses are theoretically "debt," and therefore, the debt cannot be discharged until full payment of post-petition attorney fees and costs. *ECF No. 34*, pp. 12-16. It appears Ovation seeks to include its post-petition attorney fees and costs within the definition of "debt," or within the realm of its claim, rather than separate from.

While the bankruptcy court did not analyze this perceived contention, this Court finds Ovation's proposed expansion of the definition of "debt" to be untenable under the clear guidance of the Bankruptcy Code. Therefore, the bankruptcy court's ultimate resolution is correct and accurate. This Court will entertain this construed argument, to prevent any future attempt by Ovation to expand the definition of debt to avoid bankruptcy-court scrutiny of post-petition attorney fees and costs.

First, as discussed previously, Ovation's argument is dispelled by its own Proof of Claim, which stated, "the Proof of Claim submitted by Creditor does not include amounts accruing after the filing of the bankruptcy case for interest on the claim, or any reasonable fees, costs or charges provided for under the agreement between the Creditor and Debtor or State statute under

---

[2] As stated, a lien on property only exists to secure payment of a specific debt. *In re Mason*, No. 1004195EE, 2017 WL 394344, at *7.

which Creditor's claim arose." *ECF No. 9-2*, p. 112. Next, as discussed previously, §506 and Bankruptcy Rule 2016 require that over-secured creditors provide documentation and obtain court approval to receive post-petition attorney fees and other charges. *In re Jack Kline Co., Inc.*, 440 B.R. at 733; *In re Sanchez,* 372 B.R. at 303. This requirement clearly places these post-petition attorney fees and costs outside the definition of, and separate from, the original underlying "debt" – that is, the amount stated in the creditor's Proof of Claim. *Id.* "This requirement exists to ensure that 'the court, the debtor, and other parties-in-interest can review and analyze each application for compensation.'" *In re Jack Kline Co., Inc.*, 440 B.R. at 733. In this way, when attorney fees and costs are timely presented pursuant to the terms of the Chapter 13 Plan, the charges will be reviewed by the bankruptcy court, and, if approved, paid prior to discharge of the debt. Under this procedure, Ovation's debt secured by the tax lien and its post-petition attorney fees and costs will both be fully paid. *See In re Martin*, 2022 WL 16937609, at *5–6. Perez will then be discharged and obtain a fresh start: an outcome beneficial to all parties. *See id*.

However, in making this argument, it appears Ovation seeks to avoid the possibility that the bankruptcy court could find the presented attorney fees and costs are inappropriate or unreasonable, and therefore, not approve payment. *See id*. (same argument made and dispelled by the bankruptcy court in *Martin*). As explained by the bankruptcy court in *Martin*, "[i]f this occurs, then the expense claims are not paid by the Chapter 13 Trustee and Ovation's claim is not fully paid [at least by their logic] due to the post-petition expense disallowance prior to discharge. If either of these two instances occur, Ovation can claim [again by their logic] that they have not been fully paid prior to discharge and that they have been forced to release their lien." *Id*.

In dispelling this contention, this Court agrees with the resolution discussed in *Martin*, in which Ovation made the same argument. This Court agrees the Bankruptcy Code provides oversight to the bankruptcy court for approval of fees to ensure their reasonability and to protect the debtor's ability to obtain a fresh start, the whole purpose of the Chapter 13 process. *See id.* at pp. *5-6.

Consequently, to the extent Ovation seeks to make this argument in this proceeding, and to the extent the bankruptcy court did not fully address the full scope of Ovation's argument, this argument is dispelled by the Bankruptcy Code, and the bankruptcy court reached the correct result.

### Conclusion

The arguments presented to the bankruptcy court and here on appeal are repetitive of arguments Ovation made and that were dispelled by courts in other divisions. *See Ovation Services, LLC v. Morgan*, 2023 WL 6366581, at *3,*8; *In re Martin*, 2022 WL 16937609, at *3-*4. It appears Ovation continues to litigate and appeal these same issues in an attempt to avoid bankruptcy court oversight. As aptly stated in *Martin*, "[w]hat Ovation wants is the keys to the candy store, the authority to charge what it wants, when it wants, for these claims to survive a Chapter 13 Discharge, and for debtors to be forced to pay them after their Chapter 13 cases are complete. This is an abhorrent result and one this Court would never endorse." *In re Martin*, 2022 WL 16937609, at *4.

Ovation is admonished that in the future it must comply with all tenets of Bankruptcy Rule 8014(5), including but not limited to specific statement of "Issues on Appeal" and must

frame its appellate arguments to focus on ways in which it contends the bankruptcy court erred, rather than simply reiterating arguments made to the bankruptcy court and arguing the bankruptcy court erred because it did not rule in Ovation's favor. Both of these faults are grounds for dismissal of any future appeal.

For the reasons stated herein, the Court **AFFIRMS** the bankruptcy court's Order Confirming Chapter 13 Plan. The Court **AFFIRMS** the bankruptcy court's Order of designation of appellate record.

SIGNED this 12th day of February, 2024.

JASON  PULLIAM
UNITED STATES DISTRICT JUDGE